# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| v. | § Criminal Action No. **3:16-CR-536-L** |
| | § |
| HUMBERTO BALTAZAR NOVOA (12) | § |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Humberto Baltazar Novoa's ("Defendant" or "Novoa") Motion for Revocation or Amendment of the Detention Order of November 20, 2018 (Doc. 375), filed December 4, 2018; and the Government's Response to Motion for Revocation of Pretrial Detention Order (Doc. 378), filed December 10, 2018. After considering the motion, the Government's Response, and the record in this case, the court **denies** Defendant's Motion for Revocation or Amendment of the Detention Order of November 20, 2018 (Doc. 375).

### I.  Factual and Procedural Background

On December 5, 2017, Novoa was named in the Superseding Indictment and charged with Conspiracy to Structure Transactions to Evade Reporting Requirements, in violation of 18 U.S.C. § 371, and False Statement in Immigration Document, in violation of 18 U.S.C. § 1015(a). At his detention hearing on December 8, 2017, United States Magistrate Judge Irma Carrillo Ramirez ("Judge Ramirez") released Novoa on certain standard and special conditions, including that he "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or [p]rosecution, including: co-defendants." Doc. 154 at 2.

On November 14, 2018, the Government filed a Motion to Revoke Conditions of Release (Doc. 358), alleging that it had recently become aware that Novoa engaged in "direct and repeated communications with co-defendant Alfredo Hinojosa [("Hinojosa")], following his release on

conditions." Doc. 358 at 2. The Government obtained toll records from AT&T for Novoa's cellular telephone that indicated Novoa and Hinojosa sent 94 text messages back and forth between December 21, 2017, and April 28, 2018. Doc. 358 at 2, Doc. 358-1. Novoa does not contest the authenticity of the toll records, or his or Hinojosa's alleged ownership of the cellular devices associated with the records.

On November 15, 2018, the court issued a warrant for Novoa's arrest, and he was taken into federal custody on November 19, 2018. On November 20, 2018, a hearing was conducted before Judge Ramirez to consider whether Novoa's conditions of pretrial release should be revoked. The magistrate judge determined, by written order, that the Government's motion should be granted, and Novoa's conditions of release be revoked. Doc. 365. Considering the statutory factors set forth under 18 U.S.C. § 3148(b), the magistrate judge made a finding that clear and convincing evidence existed that Novoa violated his conditions of pretrial release by having direct contact with a codefendant. The magistrate judge concluded that, in light of the circumstances of the violation, Novoa is unlikely to abide by any condition or combination of conditions of release. In arriving at that conclusion, the magistrate judge noted that Novoa began violating his conditions of release within a few days after he signed the "Order Setting Conditions." Doc. 365 at 3. The magistrate judge noted that Novoa violated conditions of release "by using a third party to facilitate contact with a co-defendant, and he specifically told the third party that the arrangement was necessary because of the court's instructions regarding contact with a co-defendant." Doc. 365 at 3. Based on these circumstances, the magistrate judge concluded that Novoa understood the consequences of not complying with his conditions of release at the time they were imposed, and, nevertheless, knowingly violated them. Doc. 365 at 3.

In his Motion for Revocation or Amendment of the Detention Order, Novoa does not contest that he violated the condition. Novoa, rather, contends that his communication with

**Memorandum Opinion and Order – Page 2**

Hinojosa did not pertain to the substance of the case and, therefore, did not violate what he characterizes as the purpose of the condition—to avoid any possibility that an investigation or prosecution could be compromised. Doc. 375 at 6. Novoa contends that the communications pertained to "work-related business," and his decision to violate the conditions for this purpose was, at most, "extremely poor judgment." Doc. 375 at 6. Novoa contends that the magistrate judge made no finding regarding his flight risk or danger to the community, and instead based the revocation determination on a finding that Novoa is unlikely to abide by any condition or combination of conditions of release. Novoa contends that he has been compliant with all of his pretrial conditions for almost a year. Novoa argues that, as a result of his detention, it is "extremely difficult, if not impossible, to review and analyze the evidence and meaningfully confer between attorney and client" because "[t]he attorney interview rooms are certainly not conducive to engaging in a confidential evaluation of the complex evidence of this case" and the detention center "does not allow attorneys to bring in their personal computer equipment for discovery review." Doc. 375 at 7.

In its Response, the Government restates and agrees with the magistrate judge's basis for the revocation. With respect to Novoa's argument that his detention will burden his ability to consult with his attorney on his defense preparation for trial, the Government contends that "he provides no authority, constitutional or otherwise, that these are reasons to justify the pretrial release of one who cannot comply with conditions set upon him by the Court." Doc. 378. The Government contends that Novoa, rather than seeking pretrial release, should file "a more appropriate request for relief" to facilitate his ability, while detained, to consult his counsel. Doc. 378 at 4.

Regarding Novoa's argument that his detention has burdened trial preparation, the court agrees with the Government that Novoa's request for relief should be made by separate motion

**Memorandum Opinion and Order – Page 3**

pursuant to a more appropriate legal standard. Novoa fails to set forth any authority establishing that a court's review under 18 U.S.C. § 3148 requires taking into consideration a defendant's access to counsel while detained. Accordingly, the court will limit its review to whether the magistrate judge erroneously revoked Novoa's pretrial release based on a finding that he is unlikely to abide by any condition or combination of conditions of release.

## II. Analysis

A district court reviews a pretrial detention order *de novo* and makes an independent determination of the pretrial detention or the proper conditions for release. *United States v. Karriem*, 2006 WL 1489484 at *2 (N.D. Tex. May 18, 2006) (citing *United States v. Fortna*, 769 F.2d 242, 249 (5th Cir. 1985)). Under 18 U.S.C. §3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." This review does not mandate a new evidentiary hearing, and the court may rely on the evidence introduced before the magistrate judge. *Karriem*, 2006 WL 1489484 at *2.

Pursuant to 18 U.S.C. § 3148(b), "[t]he judicial officer shall enter an order of revocation [of an order of release] and detention if, after a hearing, the judicial officer

> (1) finds that there is –
>
>> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>>
>> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that –
>
>> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

> (B) the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly."

18 U.S.C. § 3148.

After reviewing the record, transcript from the revocation hearing, and applicable authority, the court determines that the magistrate judge properly revoked Novoa's order of pretrial release pursuant to 18 U.S.C. § 3148. First, the court finds that clear and convincing evidence exists that Novoa violated condition 7(g) set forth in the Order Setting Conditions of Release (Doc. 154), which prohibited him from all contact, direct or indirect, with any person who is or may be a victim or witness in the investigation or prosecution, including codefendants. Novoa does not dispute that he communicated with Hinojosa following his submission to the magistrate judge's order. *See* Def.'s Mot. for Revocation, Doc. 375 ("[T]he *undisputed evidence* establishes that the communications were all related to work.") (emphasis added). As evidence of the communications, the Government attached to its initial Motion to Revoke Conditions of Release an exhibit containing excerpts of toll records from AT&T for the cellular telephone belonging to Novoa. According to the Government, the records detail communications made between Novoa's cellular telephone and that of Hinojosa between December 9, 2017, and April 28, 2018. Doc. 358-1. Defendant has not contested the authenticity of these toll records.

At the detention hearing on November 20, 2018, the Government produced testimony with respect to how it obtained and analyzed these toll records. The Government called FBI Special Agent Mark Sedwick ("Agent Sedwick") who is a member of the Cellular Analysis Survey Team ("CAST"), which is a team made up of agents and task force officers who have been certified as experts in the analysis of call detail records. Doc. 367 at 5. Agent Sedwick testified about the process by which he came to determine, based on the toll records, that Novoa and Hinojosa were communicating by text message. In light of this testimony, the court concludes that clear and convincing evidence exists that Novoa and Hinojosa exchanged text messages between the period of December 9, 2017, and April 28, 2018 and, therefore, Novoa violated condition 7(g) of the Order Setting Conditions of Release.

The court further concludes from the evidence set forth at the hearing that, pursuant to 18 U.S.C. § 3148(b)(2)(B), Novoa is "unlikely to abide by any condition or combination of conditions of release." "[A] district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990). "The statute clearly provides that these findings alone are sufficient to justify revocation and detention; a court need not also find that the defendant will flee or pose a danger to the community." *United States v. Minor*, 204 F. App'x 453, 454-55 (5th Cir. 2006) (citing 18 U.S.C. § 3148(b) and noting that the statute sets out required findings in the disjunctive) (citing *Aron*, 904 F.2d at 224 and noting that "the district court had relied on a finding that the defendant was unlikely to abide by conditions of release, 'rather than upon the presumption that' he would pose a danger to the community"). The court, therefore, limits its inquiry to whether the magistrate judge correctly concluded that Novoa is "unlikely to abide by any condition or combination of conditions of release." It need not address whether Novoa poses a flight risk or danger to the

community, contrary to Novoa's assertion that the magistrate judge failed to make this additional finding. *See* Doc. 375 at 6.

The court determines that the testimony provided at the revocation hearing regarding the use of a third-party intermediary establishes by a preponderance of the evidence that Novoa is unlikely to abide by any condition or combination of conditions of release. Agent Sedwick testified that, based on his analysis of the records and activity of cell phone towers, and source information provided to the FBI, he believed that an intermediary named Juan Lopez ("Lopez") was used to facilitate communications between Hinojosa and Novoa. Doc. 367 at 24, 32. The Government also elicited testimony by another FBI Special Agent, Ingrid Sobrevida ("Agent Sobrevida"), to corroborate that FBI agents received source information that Lopez was used as a third party to facilitate calls between Hinojosa and Novoa in violation of Novoa's terms of pretrial release. Doc. 367 at 35. Agent Sobrevida further testified that, about one and one-half hour prior to her testimony at the hearing, she interviewed Lopez in the U.S. Attorney's Office, during which he stated that Novoa instructed him to serve as a third-party facilitator between he and Hinojosa. Doc. 367 at 37. Specifically, Agent Sobreveda testified as follows:

> Q (Assistant U.S. Attorney P.J. Meitl): All right. What did, in general, Mr. Lopez state about what we're talking about here today?
>
> A (Agent Sobrevida): He stated that he did facilitate and help for Mr. Hinojosa and Mr. Novoa to communicate with each other using his own personal phone, Mr. Lopez's phone.
>
> Q: Okay. So, who proposed this idea to Mr. Lopez?
>
> A: Mr. Lopez stated that Mr. Humberto Novoa instructed him to do that third-party facilitation.
>
> Q: What did Mr. Novoa say or explain why this was necessary?
>
> A: Mr. Lopez stated that Mr. Novoa explained to Mr. Lopez that it was an instruction of the judge and the court, because they had a case going on, that Mr. Novoa had to use a third party in order to communicate with Mr. Hinojosa.

Doc. 367 at 37. Agent Sobrevida further testified that Lopez stated these facilitated calls occurred "for a long period of time," "right after Christmas of last year, 2017, and . . . stopped or slowed down recently." Doc. 367 at 39.

The court determines that a preponderance of the evidence exists that Novoa knowingly and willfully violated a condition of pretrial release and, in so doing, attempted to avoid detection by law enforcement. The court's *de novo* determination is based on the testimony at the revocation hearing regarding Lopez's role in facilitating contact between Novoa and Hinojosa, and the toll records analyzed by Agent Sedwick that show extensive texts messages exchanged by Novoa and Hinojosa between December 9, 2017, and April 28, 2018.

In support of his motion, Novoa contends that the communications were work-related and did not relate to the case. Doc. 375 at 5. Novoa did not, however, produce to the court or the Government copies of the texts to support this contention. *See* Doc. 367 at 27, lines 1-17.

Moreover, even assuming the texts were work-related, the court is unpersuaded by Novoa's argument because the offenses for which Novoa is charged were committed during the course of the business relationship between Novoa and Hinojosa. The Indictment alleges that, since the late 1990s, Novoa and Hinojosa were business partners in the music industry and together engaged in money-laundering transactions with bands that traveled back and forth to Mexico and, during the course of this relationship, Novoa and Hinojosa maintained offices at the same location in downtown Dallas. The statutory purpose of pretrial release conditions is to reasonably assure the appearance of the person as required and the safety of any other person and the community, which includes ensuring that a defendant does not commit additional crimes during the period of release. *See* 18 U.S.C. § 3142(c). Accordingly, by prohibiting contact between Novoa and Hinojosa, the

condition at issue was, in part, designed to ensure that the codefendants did not conduct further criminal activity in connection with their business partnership.

Novoa cites *United States v. Wolcott* in support of his argument that the purpose of the restriction regarding contact between codefendants is to avoid any possibility that an investigation or prosecution could be compromised, and Novoa's decision to engage in allegedly work-related communications with Hinojosa was, at most, an act of "extremely poor judgment." Doc. 375 at 4, 6 (citing 2009 U.S. Dist. LEXIS 58611, *1 (M.D. Tenn. July 8, 2009)). The court first notes that *Wolcott* is a Tennessee district court opinion and, therefore, not binding on the court. Moreover, the case is factually distinguishable and does not stand for the legal proposition as characterized by Novoa.

In *Wolcott*, the defendant made contact with a codefendant minutes before the codefendant's scheduled sentencing hearing, while both were seated on a bench in plain view at the courthouse. 2009 U.S. Dist LEXIS at *1-2. The court's inquiry was narrowly focused on the specific circumstances surrounding the communication, and the court concluded that it was "extremely unlikely that [the defendant] would choose this occasion to attempt to influence [the codefendant's] testimony." *Id*. at *6. Contrary to Novoa's argument, the court did not state that the general purpose of a no-contact restriction was to "avoid any possibility that an investigation or prosecution could be compromised." Doc. 375 at 6. The court, rather, made a narrow finding that, in light of the circumstances surrounding the contact, the defendant's engagement with the codefendant did not justify revocation and detention pursuant to the considerations set forth in 18 U.S.C. § § 3148(b)(2). The single communication made in plain view in *Wolcott* is distinguishable from the extensive, repeated, and deceptive contact made in this case. In light of the circumstances surrounding Novoa and Hinojosa's business relationship, the offense conduct alleged in the Indictment, and the extensive and deceptive nature of the contact made in violation of the pretrial

release condition, the court determines that Novoa is "unlikely to abide by any condition or combination of conditions of release" pursuant to 18 U.S.C. § 3148(b)(2)(B).

## III. Conclusion

For the reasons stated herein, the court **denies** Defendant's Motion for Revocation or Amendment of the Detention Order of November 20, 2018 (Doc. 375). Novoa shall remain confined pending the trial of his case.

**It is so ordered** this 5th day of March, 2019.

Sam A. Lindsay
United States District Judge